Good morning Your Honor. May it please the court, my name is Laura Weiler and I represent Cynthia Faria. A defendant who waives a jury and submits her rights and liberty to a trial judge is entitled to the same fair, patient, and impartial consideration that she would be entitled to by a jury of her peers. Here, Cynthia Faria did not receive the fair, patient, and impartial consideration that she was entitled to. In fact, she was denied her fundamental right to a fair trial where the trial court was biased against defense counsel, pre-judged the merits of the case, denied Faria the right to make a full closing argument, and improperly interfered with defense counsel's cross-examination of witnesses. The trial court's comments throughout trial reveal her bias against defense counsel and her pre-judgment of the merits of this case. Cynthia Faria was entitled to a trial in which the court heard all the evidence and the arguments with an open mind. Here, the comments throughout trial indicate that the trial judge was not open-minded. In fact, the entire trial was polluted with comments demonstrating bias against the defense. Those comments were directed to whom? There were no comments about the witnesses, were there? Other than the fact that there were some language problems. There were some comments regarding the language problems. Most comments were related, or comments, respectfully, related to the actions or inactions or ability or inability of defense counsel. Thank you. And some of those substance of the comments, such as, I can't stand the way you do this, it's going to make me scream, I can't stand it, it's just a waste of time and it's unbelievable. Those comments demonstrate animosity, hostility, ill will, distrust of defense counsel. I'm sorry? You know how aggravating it is for a seasoned trial judge to have an attorney in front of them that doesn't know what they're doing? I mean, it's just, you do want to scream, you want to tear your hair. So, I mean, if you say it, does that mean that you're prejudiced against their client or you're just, you don't want to put up with this anymore? It means you're prejudiced against the client. You can be prejudiced against defense counsel. The case law clearly says, people who, B. Jones, animosity, hostility, ill will, demonstrates prejudice against the defendant and the fundamental right to a fair trial. Certainly the trial judge was agitated with defense counsel in this case, but those comments crossed the line beyond mere management of the case and went into prejudice against defense counsel. In fact, the comments, there were so many of them, more than 80 times. Let's be real precise. We're not talking about the rights of the defense counsel. We're talking about the defendant, correct? And that's the focus that we have to be looking at, right? Yes. So how, what can we glean from this record that there was any animosity toward the defendant or anything that we should have less than confidence in the ultimate result in the decision in this case, in terms of the defendant? Well, there are two things. One, I think the number and substance of the comments indicate that the trial judge in this case was so preoccupied with her agitation of defense counsel that it changed her focus from the merits of the case. And secondly, the only way Cynthia Fiery could speak in this case was through her counsel. And if the trial court was that biased against defense counsel, then it interfered and it changed her focus from the merits of the case to the merits that counsel was advocating on behalf of. The merits of the case got lost in the agitation of the judge in this case. Well, on page H23, I can't stand the way you do this. It's going to make me scream. What does it have to do with the facts? Exactly. That's exactly my point. What does it have to do with facts? The judge saying, you are driving me crazy. Do not answer my question. What does that have to do with the judge's analysis, understanding, decision-making about the facts? Well, let me clarify that there are two different forms of prejudice that I'm talking about here. One, prejudging the merits of the case. And two, being pre-prejudiced against defense counsel and therefore defendant. And in this case, when the court is exhibiting this sort of hostility against defense counsel, not once or twice, but time and time again, that indicates that the judge went beyond being a fair and impatient, I'm sorry, a fair and patient trier of fact. I think what you're saying, correct me if I'm wrong, displeasure or irritation equals judicial prejudice. I wouldn't necessarily say that. Well, you know, it's kind of the way it sounds, respectfully. Right. I understand. But again, I think this crossed the line beyond displeasure and irritation and went to outright animosity and agitation. And it clearly flustered defense counsel. And that just sort of was a chicken and egg situation. The more the judge got agitated with defense counsel, the more counsel seemed to agitate the judge. Now, this is a bench trip. Yes. And this is possession of a stolen motor vehicle. Yes. And the defense counsel is arguing that she's not guilty because the state didn't prove what the license number was or she's not guilty because the state didn't prove what the VIN number was. And the judge turns around and says, well, you stopped that. They don't have to prove this. Well, I'm not going to listen to this anymore. Now, does that prove the judge's prejudice against defense counsel or the judge just doesn't want to listen to nonsensical arguments? Well, that one instance would probably be acceptable. But defense counsel actually tried to make a point prior to that, challenging the credibility of the witnesses, saying it doesn't make sense that the police officers were going to arrest the defendant. They were a second or two away, and yet the county sheriff put her in handcuffs. But the trial court cut that off before counsel was even able to impeach that credibility. You say she said, makes sense to me. Exactly. But she was saying it makes sense that police officers, the city of Chicago police officers, would affect the rest. That was not the point defense counsel was trying to make. Defense counsel was trying to make, if the city was going to arrest the defendant, why did the sheriff put her in handcuffs? But she was prevented from making that argument. I'm sure you understand what you're up against. Three of us have how many years on the bench? We try to be calm and patient, good judicial demeanor. We all believe it's a really important part of being a judge. But other times when each one of us, I'm not speaking for the others, in my own 27 years on the bench, have I gotten a little short-tempered and said things I wish I hadn't? We're human beings. Things happen. But what we're looking at now is how can you show us that that kind of reaction, human emotion of a judge, argument is being made, it doesn't make any sense, and the judge responds, it makes sense to me. How is that somehow evidence that the ultimate decision of guilty was not based on the facts? Well, first of all, I would say that the judge said it makes sense to me before counsel was able to make that full argument. And it indicates her further comments about police officers routinely arresting rather than a sheriff indicate that she didn't actually understand. She didn't listen to what defense counsel was trying to say. And certainly, again, it's natural, as you say, to exhibit some frustration throughout the course of how many trials that are done. But there is a line between an occasional expression of frustration and 80 interruptions. In the course of a relatively short bench trial and repeated comments, the comments, I can't stand this, you're going to make me scream, don't go over these useless questions. It frustrates counsel's ability to frame his own defense. And it does go beyond the line. Again. Before you go to it again, can I ask you another question? Sure. The issue has been raised and all of this has been forfeited. It was not raised by counsel in a post-trial motion. And so, therefore, we should not address it. The Supreme Court in People v. McLaren in December discussed the issue of when forfeiture can be relaxed. And in fact, a pretty hard line, and said that the line of cases that talk about if it's judicial conduct, we'll just move on. The court seemed to say that's not really what the rule is in Illinois. Well, I somewhat disagree with that interpretation of McLaren. I don't think McLaren says, first of all, just to clarify, we're talking about the rule that says due to the practical difficulties of objecting to the trial court's conduct, the forfeiture rule should be relaxed in certain situations. And McLaren says, doesn't say never in a bench trial should that happen anymore. It simply says that that exception to the forfeiture rule should be applied sparingly. And the state indicates that it's only in bench trials or jury trials or death penalty cases where this rule should be applied. And I don't think that's what McLaren says. I think McLaren specifically indicates that the forfeiture rule can be relaxed, whereas here an objection would have fallen on deaf ears. And defense counsel was in a difficult situation. He clearly was agitating the judge. And so he was in a difficult situation. My reading of McLaren, and the Supreme Court's continued interest in forfeiture in plain error, leading up to last week's case, they have a very clear view of how they're looking at all this, I think. They're trying to teach us something. And certainly last week they were sending a very clear message to this Court that we need to be very precise about forfeiture in plain error. But in McLaren, they say, our review of unpreserved claims of error under Sprinkle closely resembles our review of plain error. They're so serious that they threaten the integrity of the judicial process. It seems to me the Court is saying the only time forfeiture can be relaxed when we're discussing judicial conduct is if the argument is that it is somewhat like the second prong of the plain error analysis. I agree. McLaren actually does drop a footnote that says this is not a plain error analysis. This is an exception to the forfeiture rule. But I would – It is similar, they say. It is absolutely similar. It is absolutely similar. And I would say that, and we argued in the brief, that this would constitute plain error as well. And I would point out that the forfeiture rule – You don't really believe this constitutes – this should be reviewed under plain error. This was not a close case. Under the second prong of the plain error. Look at it. I mean, there's only half a plain error. Either you have all a plain error or you have none a plain error. So if you can't establish that this is a close case, we don't even have to consider plain error. So you either win on forfeiture if it's not forfeited, or, you know, what relief can we give you? I disagree with that analysis. I think that there are two prongs to plain error. You can win on either one? That if the error is significant, so significant that it denies the defendant a fair trial, then he's entitled to a plain error review, regardless of the closeness of the case. That's my interpretation of Herron and Pietowski. And I think in this case, for the same reason that the forfeiture rule should be relaxed, that the conduct of this judge was such that it denied Cynthia Farrier her due process right to a fair trial, as well as her right to a closing argument, which is rooted in the, I'm sorry, in the right to the effective assistance of counsel. So we would have to say that the judge's conduct threatened the integrity of the judicial process. Yes. That seems to be the standard that they set out in McLaren. Yes. Well, and McLaren indicates that where the objection would have fallen on deaf ears. And I think in this case, this is the perfect case that McLaren contemplates, would fall within that narrow exception to the rule. And the trial judge repeatedly said, at the post-sentencing motion, that she thought this was one of the few cases where there was no error, and that an appeal would be a waste of money. That indicates the trial judge was not open to any consideration, had the defense counsel objected anyway. So I think that McLaren does not preempt the relaxation of the forfeiture rule in this case. I do just want to make a quick point. I mentioned the closing argument, and we discussed some of the ways in which the judge preempted the argument in that case. But there is also an issue with regard to the cross-examination. And, again, the trial court here denied defense counsel the right to cross-examine. In fact, in some instances, commandeered the cross-examination altogether, saying, I need to ask the question. Let me ask. I'll ask it. And that limited the ability for counsel to conduct the cross-examination as the way he wanted to. Counsel, I think you've used up your time. We'll give you some rebuttal. Thank you very much. Thank you. State. May it please the Court, I'm Assistant State's Attorney Jacqueline James, on behalf of the people of the State of Illinois. A plain reading of the record in this case does not support defendant's allegation of actual bias. In terms of the cross-examination and the interjections made during cross-examination, these interjections essentially were not only proper, but essentially aided defendant in eliciting the information he was attempting to elicit. No actual bias can be demonstrated considering the fact that these same type of interjections were made during the people's direct examinations of their witnesses. These interjections were made to clarify and to facilitate prompt and orderly proceedings, which is exactly what a judge is supposed to do. It's apparent from a reading of the record that there is also a language barrier with one of the victims, and her need for an interpreter is shown that she has a problem understanding the questions to begin with. Then at a certain point, even the interpreter had questions as to what the defense counsel was asking, because the defense counsel's questions were so compound and convoluted, it was hard even for the interpreter to understand. Even at a certain point, defense counsel conceded, that's a good question to the trial court, showing that the trial court was essentially aiding defense counsel in presenting defendant's case. The instant case is similar to People v. Griffin, where the trial court prevented defense counsel from unnecessary interference in presenting defendant's case. And that's exactly what was happening here. Defendant cites People v. Coffield and People v. Everhart as support for defendant's allegations. These are very distinguishable, because in People v. Coffield, the trial court assumed the role of the prosecutor when they took over the examinations, recalling their own witnesses, and recalling the victim, who is 13 years old, and asking her on the stand, why are you lying to me now? In that case, clearly the trial court was assuming the role of the prosecutor in intimidating the witness. In People v. Everhart, the trial court cut off a relevant line of questioning when the defense counsel was getting into possible motives as to why the witness was lying on the stand. There, the reviewing court found that that was biased. But here, all we have is a court clarifying, questioning, clarifying testimony, and doing exactly what she was supposed to do. Now, in regard to the, let's say, you know, good citizen of the people of the state of Illinois, has nothing to do one afternoon and says, I'm going to go to 26th and California and learn about justice. And they go to this courtroom and they sit there and they say, okay, this is, I've never seen a trial, I've only seen it on TV, I want to really see how this works. One of the good people of the state of Illinois is sitting there. What do you think that person would say when the judge interrupts the defense counsel 80 times and says, you make me want to scream, I can't stand this anymore? What do you think, does that somehow undermine the public's confidence in the integrity of the judiciary? Well, the trial court's comments were harsh, but there's nothing that says that actual bias is shown just by expressing near annoyance at ill-prepared defense counsel's repeated improper questioning. He never, or the trial judge never made one comment regarding defendant's case, one comment regarding defendant's guilt, one comment regarding the witness's veracity. All of the comments were just expressing annoyance after she repeatedly warned him that he was asking improper questions. And he never responded by giving, by changing the way that he was asking the questions. This was more, all allegations of judicial bias have to be looked at in context and in specific response to the events taking place. And when looking at these remarks, these remarks were in specific response to defendant's pattern of improper questioning and were made to maintain proper courtroom proceedings. They were not showing any actual bias against defendant. You were in a classroom, remember, I bet you were in law school, you're in a classroom and a professor calls on you and you start to answer, you know, give your analysis of the case. And the professor interrupts you 80 times and starts screaming at you. Would you think that would be a sign of bias towards you as a student? No, not if I was asking improper questions the whole time. He was merely trying to correct me rather than showing bias. Well, if I didn't understand his corrections and I kept making the same mistake over and over again, then those corrections might be warranted. Do you think we should bring an opinion that says that we give a greater latitude to trial judges in their expression of displeasure to ill-prepared defense attorneys when it's a bench trial as opposed to when it's a jury trial? Absolutely. There's a presumption that... You get to yell at them more if it's a bench trial than you do if it's a jury trial. Well, there's... Jury trial, you wait until it's over and then you yell at them. Well, there's the presumption that a bench trial, the trial effect will be impartial and will only consider the proper relevant evidence when coming to its verdict. Maybe there's a different standard because jurors would be so shocked by this kind of behavior. They couldn't help but assume that the judge was rejecting the defense. It looks that way. Yes. It might influence the jury because it really looks like that's what the judge is doing. Yes, exactly. The jury, with their inexperience, they would feel that the negative opinion of the questioning of the defense counsel was more or less communicating a negative opinion of the defendant. But in this case, the presumption still stands. There's nothing here in the record that shows any bias towards the defendant or her case. In regard to the closing argument, the defendant here was able to make a complete closing argument. The interjections were simply the trial courts giving the defendant a second chance to correct the legitimately flawed arguments that he was making. Now, not only were these interjections made when defense counsel was making their closing argument, but the trial court made the same type of interjections during the people's closing argument when the people made a flawed argument. And the assistant state's attorney conceded the fact that the judge was right in correcting that portion of her argument. The judge yelled at everybody. The judge is engaging in dialogue to provide the counsels an alternative avenue for presenting a different theory that would be more sound, which is actually a benefit that they would not have gotten had this been in front of a jury. It was a benefit to help the state. And the defense counsel. Once the trial court heard a part of the argument that they believed was flawed and that they were right was flawed. So when we have displeasure overall, justice prevails. Excuse me? When we have displeasure overall, justice prevails. No, no, that's not true. Good for the goose, good for the goose. No, that's not true. But it's just showing that there isn't bias against the defendant by showing that, you know, she just has a hands-on approach to maintaining her courtroom. There's nothing that shows that she has gone across those boundaries to show bias against the defendant. She just has a hands-on approach to maintaining and facilitating prompt and orderly proceedings. Nicely done. Hands-on approach. Even during defendants, one of the interjections during closing argument, defense counsel even said, maybe I misspoke. Conceding the fact that his argument could be flawed, which it was. Very clearly flawed. In the two cases that the defendant cites are People v. Hyman and People v. Stevens to support their allegations for the closing argument, the defendant was not able to give one. And in People v. Hyman, there was 40 to 50 interruptions during the closing argument where the reviewing court found that he was challenged at every turn and there was numerous derogatory remarks were made about defendant. In People v. Stevens, before the end of the closing argument, the trial court stated, I'm as clear and convinced of defendant's guilt as I can be, cutting off the rest of the argument. This is not the case here. Here, defendant was able to give the entire closing argument. Yes, the trial court made interjections, but the argument was complete and coherent. And there was no error here. There's nothing in the record, individually or cumulatively, that shows that the court overstepped its boundaries. All interruptions were warranted and not one-sided and were exactly what the judge was supposed to do to maintain her courtroom. For these reasons and those stated in the people's brief, we ask that this court affirm defendant's conviction and sentence. Thank you. Thank you, Ms. James. Just very quickly, Your Honors. I would just say that the case law is helpful here to get a sense of the law, but each instance of evaluating a trial court's conducts and remarks, as the state conceded in its brief, the standard of review was saying no vote. And it depends on the individual facts and circumstances of each case, and I think the record speaks for itself here. And this wasn't balanced. Defense counsel was interrupted far, far more often than the state's attorney was. And the comments that the court gave did not help expedite the trial or help defense counsel in any way. And then the last point I would make is I don't believe you get to yell at counsel more simply because it's a bench trial. The Stevens Court said that a defendant is entitled to the same fair and impartial trial or impatient trial fact as you would at a trial. And just to close, I would just quote from Stevens, which I think is relevant here. What cannot be measured is the impact of this kind of management of a criminal trial on the onlooker. It demeans the solemnity of a proceeding where a person's liberty is at stake. It demeans the role of counsel. And it casts a shadow over the even-handedness of the trier of fact in a proceeding where the absence of bias should be beyond a reasonable doubt. If there are more and more questions, I would ask that this court reverse and remand for a new trial. Counsel is thank you. The matter will be taken under advisement.